**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **URSULINE COLLEGE, ET AL.** | ) | CASE NO. 1:26-cv-01498 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| **GREAT MIDWEST ATHLETIC CONFERENCE ("G-MAC")** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS, URSULINE COLLEGE AND GANNON UNIVERSITY'S MEMORANDUM IN SUPPORT OF THIS COURT'S JURISDICTION OVER PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This Court has jurisdiction to maintain and decide the requested injunction sought by Plaintiffs. A federal question is evident from the face of the Verified Complaint, which asserts a claim under Title IX of the Education Amendments of 1972. As established by the Sixth Circuit, this Court may rule on the preliminary injunction on that basis, as supplemental jurisdiction independently supports injunctive relief on the state law claims as long as the corresponding federal claim remains pending. Because Plaintiffs' Title IX claim has been pled and has not been dismissed, the federal question "anchor" claim is live, and this Court accordingly maintains jurisdiction to decide Plaintiffs' Motion for Preliminary Injunction.

## II. LAW AND ARGUMENT

### A. The Court has federal question jurisdiction because the Complaint pleads a pending Title IX claim against G-MAC.

Subject-matter jurisdiction exists under 28 U.S.C. § 1331 because the Verified Complaint asserts a federal claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et*

*seq.* The state law breach of contract and declaratory judgment claims are before the Court on supplemental jurisdiction under 28 U.S.C. § 1367 because they are a part of the same case or controversy.

G-MAC applied for and received financial assistance under the federal Paycheck Protection Program ("PPP"), administered by the U.S. Small Business Administration under the CARES Act, under Award ID 9025867209. As a condition of that federal financial assistance, G-MAC was required to certify compliance with applicable federal law, including nondiscrimination requirements. That acceptance of PPP funds and the corresponding compliance certifications establish a federal nexus governing G-MAC's obligations when it administers athletic opportunities affecting federally funded member institutions.

The alleged subsequent forgiveness of the PPP loan does not defeat the application of Title IX. Title IX obligations based on federal funding are in place during the period a recipient receives and holds federal financial assistance, and the relevant question is whether G-MAC engaged in sex-based discrimination during that coverage period or later made decisions based on the same violations, not whether the funds were later forgiven. Because the loan was extended and used before any alleged forgiveness, there may have been instances during that period in which G-MAC administered membership, scheduling, and championship access to Ursuline College in a manner that violated Title IX, or subsequent decisions based on the same violations. Forgiveness of the PPP loan after the fact does not retroactively strip the Court of a federal question appearing on the face of the Complaint.

Independent of the PPP funds, G-MAC is subject to Title IX as a conference exercising controlling authority over the athletics programs of its federally funded members because: (i) G-MAC exercises centralized authority over membership status, scheduling, regular-season

competition, championship eligibility, and postseason pathways; (ii) each member institution, including Ursuline, receives federal financial assistance and is subject to Title IX; and (iii) through those governance decisions, G-MAC functions as a gatekeeper for athletic participation opportunities at federally funded institutions. *See Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 272 (6th Cir. 1994) (recognizing that an athletic association may qualify as a Title IX recipient where it receives dues from federally funded member institutions and exercises controlling authority over their athletic programs, and applying a 'substance over form' approach that rejects "artificial distinctions in [institutional] structure" permitting organizations that control federally funded educational athletics to evade Title IX). These allegations are sufficient, at a minimum, to establish that G-MAC is subject to Title IX and thus to establish a federal question.

**B. Under Sixth Circuit case law, this Court may rule on the injunction where a federal question is evident from the face of the complaint and pending.**

Even if G-MAC later moves to challenge the underlying merits of the Title IX claim, that dispute does not prevent the Court from ruling on the request for preliminary injunctive relief now. In *Turner-Golden v. Hargett*, defendants challenged a preliminary injunction motion on both jurisdictional and substantive grounds while a separate motion to dismiss was pending. No. 3:12-cv-00765, 2012 WL 3202307 (M.D. Tenn. Aug. 3, 2012). Given the presence of a federal concern evident from the pleadings and the time sensitivity of the issues, the court assumed, for purposes of ruling on the motion, that it had federal question jurisdiction over the case and addressed the motion on its merits, reserving full jurisdictional analysis for the pending motion to dismiss. *Id.*

The same logic applies here. A federal question (the Title IX claim) is apparent on the face of the Verified Complaint, and the matter is time-sensitive because Conference scheduling and recruitment for the 2027–2028 academic year are underway. Once schedules are finalized without Ursuline and particular recruits or current students or coaches are lost, the lost opportunities cannot

be recreated. *Turner-Golden* confirms that the Court may proceed to the preliminary injunction analysis without first conclusively resolving every merit argument G-MAC may later raise.

**C. Regardless, this Court may enjoin conduct on the state law claims as long as the federal claim remains pending.**

Under 28 U.S.C. § 1367(a), a district court with original jurisdiction over a federal claim has supplemental jurisdiction over all other claims forming part of the same case or controversy. That authority extends to granting injunctive relief on the related state-law claims, and the statute draws no distinction between damages and injunctions. This is the case here.

In *Voyticky v. Village of Timberlake*, the Sixth Circuit held that where a plaintiff pleads federal claims, the district court has supplemental (and therefore subject matter) jurisdiction to address additional state law claims that are related. 412 F.3d 669 (6th Cir. 2005). Similarly, in *Capital Park Ltd. Dividend Housing Ass'n v. Jackson*, the Sixth Circuit held that the district court properly exercised supplemental jurisdiction over breach of contract claims deriving from the same nucleus of operative fact as claims for injunctive relief. 202 F. App'x 873 (6th Cir. 2006).

Here, the breach of contract and declaratory judgment claims share a common nucleus of operative fact with the Title IX claim, as all arise from G-MAC's decision to impair Ursuline's Conference membership and exclude it from scheduling. Accordingly, they form one "constitutional" case. In *United Mine Workers of America v. Gibbs*, the Supreme Court held that state and federal claims deriving from a common nucleus of operative fact, such that a plaintiff would ordinarily be expected to try them in one proceeding, comprise one constitutional case, and that if the federal claims are dismissed before trial, the state claims should ordinarily be dismissed as well, without prejudice and left for resolution to state tribunals. 383 U.S. 715 (1966).

Because the Title IX claim is pending, the federal anchor claim remains viable, and the Court has jurisdiction to issue the requested injunction now. Moreover, as long as the federal

anchor claim remains pending, the Court may exercise supplemental jurisdiction and grant injunctive relief on the state law claims as well.

Respectfully submitted,

*/s/ Matthew R. Duncan*
Matthew R. Duncan (0076420)
Hilary F. DeSaussure (0098989)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH 44308
Telephone: (330) 253-5060
Email: mrduncan@bmdllc.com
hfdesaussure@bmdllc.com

and

Krista W. Osterfeld (0097842)
**BRENNAN, MANNA & DIAMOND, LLC**
41 S. High Street, Suite 3750
Columbus, Ohio 43215
Telephone: (614) 246-7500
Email: kwosterfeld@bmdllc.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of August, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Matthew R. Duncan*
Matthew R. Duncan (0076420)
*Counsel for Plaintiffs*

4906-3806-1257, v. 1