**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Ursuline College et al., | ) | |
| | ) | Case No. 1:26-cv-01498-DAR |
| Plaintiffs, | ) | |
| | ) | Judge David Ruiz |
| vs. | ) | |
| | ) | |
| Great Midwest Athletic Conference, | ) | |
| | ) | |
| Defendant. | ) | |

**G-MAC's Initial Brief re Jurisdiction over Title IX Claim**

Defendant Great Midwest Athletic Conference ("G-MAC") submits this brief in response to the Court's question whether it has subject-matter jurisdiction over plaintiffs' Title IX claim if the Court concludes that Title IX does not apply because G-MAC did not receive federal financial assistance during the relevant period.

The answer is yes. Title IX's requirement that a defendant receive federal financial assistance is an element of a Title IX claim on the merits, not a limitation on the Court's subject-matter jurisdiction. A decision that G-MAC did not receive such assistance would support dismissal of the Title IX claim under Rule 12(b)(6), not under Rule 12(b)(1).[1] It would not deprive the Court of jurisdiction over that claim or the case as a whole.

The Court may therefore decide the pending preliminary-injunction motion confident in its subject-matter jurisdiction over the Title IX claim and, at a minimum, its supplemental

[1] G-MAC intends to file a Rule 12(b)(6) motion on or before its current September 11, 2026 answer deadline, seeking to dismiss all claims on various grounds, including the Title IX claim due to no plausible allegation of federal financial assistance during the relevant period.

jurisdiction under 28 U.S.C. § 1367 over plaintiffs' related state-law contract and declaratory-judgment claims.[2]

## Background

Plaintiffs Ursuline College and Gannon University (collectively, "Gannon") allege that G-MAC is subject to Title IX because (a) it received a Paycheck Protection Program ("PPP") loan, and (b) its member institutions receive federal financial assistance and pay dues to G-MAC. (Compl. ¶ 103, 107.)

At the August 6, 2026 preliminary-injunction hearing, G-MAC's Commissioner Thomas Daeger testified that G-MAC received its PPP loan from a private bank and that the loan was forgiven in April 2021—well before the events Gannon claims violate Title IX.

At the close of the hearing, the Court asked whether it would have subject-matter jurisdiction to rule on the preliminary-injunction motion if it decided that G-MAC did not receive sufficient federal financial assistance to trigger Title IX. The Court directed the parties to brief the issue. G-MAC submits this initial brief in response.

## Law and Argument

### I. Gannon cannot show G-MAC was "receiving Federal financial assistance" at the time of the alleged violations.

Title IX prohibits sex discrimination in "any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Because the statute uses the present participle "receiving," Title IX applies only while the defendant is actually receiving such assistance.

---

[2] G-MAC expects to assert counterclaims against plaintiffs. Because the parties are diverse and the amount in controversy on those counterclaims will exceed $75,000, the Court will have independent diversity jurisdiction over them. That provides an additional reason for the Court to exercise supplemental jurisdiction over plaintiffs' related state-law claims.

*See Welch v. United network for Organ Sharing*, 767 F. Supp. 3d 746, 778 (M.D. Tenn. 2025) (interpreting identical language in Title VI: "use of the word 'receiving'—the present participle of 'receive'—makes it unequivocally clear that the program or activity at issue must be receiving, or 'com[ing] into possession of,' such assistance" at the relevant time).

**A. Gannon's dues-based theory is foreclosed by Supreme Court precedent.**

Gannon argues that G-MAC is subject to Title IX because it "receives dues from federally funded member institutions." (PI Memo. 18, ECF 9 at PageID 149.) In 1999, the U.S. Supreme Court rejected that very argument in *Nat'l Collegiate Athletic Assoc. v. Smith*, 525 U.S. 459, 466-470 (1999). There, the court held that the NCAA is not a recipient of federal financial assistance merely because its member institutions receive federal funds and pay dues to the association. *Id*. at 468–70. Although *Smith* left open the question whether earmarked federal funds used to pay dues would produce a different result, Gannon neither alleged nor offered evidence that any federal funds paid to G-MAC member institutions were earmarked for conference dues.

**B. The PPP loan does not trigger Title IX because it was forgiven years ago.**

Gannon's reliance on G-MAC's receipt of a PPP loan fares no better. Courts are divided on whether a PPP loan itself constitutes "Federal financial assistance" under Title IX. *Compare Karanik v. Cape Fear Academy, Inc*., 608 F. Supp. 3d 268, 280–84 (E.D.N.C. 2022) (PPP loan constitutes federal financial assistance), *with Gardner v. Sage Ridge School*, No. 3:24-cv-00403, 2025 WL 1695131, at *7 (D. Nev. June 17, 2025) (questioning whether an unconditioned PPP loan triggers Title IX).

This Court need not resolve that disagreement because all agree that any Title IX obligations cease once a loan is forgiven or repaid. *See Gardner*, 2025 WL 1695131, at *7–8

(Title IX inapplicable where PPP loan was forgiven before the alleged discrimination); *Karanik*, 608 F. Supp. 3d at 284 (obligations last only "for the life of [the] loan"); *DiPietro v. Archbishop Wood High School*, 711 F. Supp. 3d 488, 495 (E.D. Pa. 2024) (interpreting the identical "receiving Federal financial assistance" language in Section 504 of the Rehabilitation Act and noting that, while courts disagree whether a PPP loan qualifies, "[n]one dispute . . . those obligations would cease when the government forgives the loan").

Commissioner Daeger's unrebutted testimony established that G-MAC's PPP loan was forgiven in April 2021—more than four years before the membership decision Gannon challenges.[3] Because any Title IX obligations arising from the loan ended in 2021, the loan cannot supply the necessary federal financial assistance for the 2025–2026 events at issue.

Therefore, Gannon has not made a threshold showing that Title IX applies. As explained in the next section, that reality does not deprive the Court of subject matter jurisdiction.

## II. The Court has subject-matter jurisdiction, regardless of how it decides the "receiving Federal financial assistance" question.

As the Supreme Court held in *Arbaugh v. Y&H Corp.*, statutory coverage requirements are elements of a claim on the merits—not limitations on subject-matter jurisdiction—unless Congress "clearly states" that the restriction is jurisdictional. 546 U.S. 500, 510–16 (2006). Title IX's requirement that a defendant be "receiving Federal financial assistance" is such a coverage requirement. When a Title IX claim fails because the plaintiff cannot show receipt of federal financial assistance at the time of the alleged violation, the failure is one of merits, not jurisdiction. *See Doe by and through Doe v. Currey Ingram Academy*, 721 F. Supp.

[3] Attached as Exhibit A is a true and accurate copy of the loan forgiveness notice to G-MAC.

3d 682, 691-92 (M.D. Tenn. 2024) (dismissing Title IX claim under Rule 12(b)(6) on the merits, not for lack of jurisdiction, where plaintiff did not plausibly allege receipt of federal financial assistance); *Gardner*, 2025 WL 1695131, at *7-8 (same).

Accordingly, the Court has subject-matter jurisdiction over Gannon's Title IX claim regardless of how it decides the federal financial assistance issue.

The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over Gannon's state law breach-of-contract and declaratory-judgment claims because they form part of the same case or controversy as the Title IX claim. The Court should continue to exercise that jurisdiction in deciding the pending preliminary-injunction motion and throughout the remainder of the case.

## Conclusion

The Court has subject matter jurisdiction to proceed to decide plaintiffs' pending preliminary-injunction motion.

Respectfully submitted,

Dated: August 21, 2026

s/ Matthew J. Cavanagh

David B. Cupar (0071622)
Matthew J. Cavanagh (0079522)
McDonald Hopkins LLC
600 Superior Ave., East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for*
*Great Midwest Athletic Conference*